## Case No. 11,297.

### In re PORTSMOUTH SAV. FUND SOC.

[2 Hughes, 238.] [1]

District Court, E. D. Virginia.　May, 1874.

BANKRUPTCY—ELECTION OF ASSIGNEE—APPOINTMENT BY COURT.

Where a majority of resident creditors who had been represented in a first creditors' meeting, and who had proved their claims by attorney, had voted for one person as assignee, and a majority of creditors who had proved in person had voted for another person as assignee in bankruptcy, *held*, that there was no election, and that the court was at liberty to appoint an assignee;—which was accordingly done, of a person equally acceptable to both parties and not concerned in the strife.

This cause was argued at length by Gayle and Holladay against the confirmation of the election of the Bains as assignees, and by W. H. C. Ellis for the election. J. G. Bain had been appointed attorney in fact by a majority in number, representing a majority in amount of the creditors. These creditors, except in one or two instances, had not proved their claims by taking the oath in person, as required by the 22d section of the bankrupt law [of 1867 (14 Stat. 527)], but the oaths had been taken by Bain as their attorney. The question was, whether the proof of the claims of creditors who resided in the district could be made by attorney.

---

## Case No. 11,298.

### In re PORTSMOUTH SAV. FUND SOC.

### Ex parte MURDAUGH et al.

[2 Hughes (1877) 239; 11 N. B. R. (1895) 303.] [1]

District Court, E. D. Virginia.

Circuit Court, E. D. Virginia.

BANKRUPTCY—COUNSEL FEES—DEBTOR'S COUNSEL.

1. In involuntary bankruptcy, where there has been contested litigation of the question whether acts of bankruptcy had been committed, and whether the debtor should be adjudicated a bankrupt, the debtor's counsel in such litigation should be allowed a fee out of the assets in bankruptcy. Per Hughes, District Judge.

2. The creditors having allowed the counsel for the petitioning creditor a fee for prosecuting the petition, the debtor's counsel should be allowed the same fee by the court.

3. This order of the district court must be reversed. Per Bond, Circuit Judge.

[In bankruptcy. For prior proceeding in this litigation, see Case No. 11,297.]

HUGHES, District Judge. This is a petition of C. W. Murdaugh, John H. Gayle, and James G. Holladay, praying to be allowed a fee as counsel in resisting the petition in bankruptcy which was for two years prosecuted in this case against the Portsmouth Savings Fund Society. On the 17th June, 1872, one of the creditors of that society filed a petition in this court charging acts of bankruptcy, and praying that the society might be adjudicated a bankrupt. It seems that the board of directors of the corporation were divided on the question of supporting or opposing this petition. The board was composed of John N. Ashton,

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

president, John Cocke, Leigh R. Watts, George M. Bain, Jr., and George S. Neville. Another member, N. G. Forbes, had also been duly elected, but it is claimed that he never acted. I see no evidence of his having taken part in any action of members of the board, except in uniting in an affidavit with George M. Bain, Jr., and George S. Neville, on the 2d July, 1872, which was on that day filed in this cause. There was long and warmly contested litigation, Ashton, president, Cocke, and Watts taking part against the petitioning creditor, and Neville and Bain siding with him. In 1870, C. W. Murdaugh had been elected the general attorney of the society, succeeding in that office his father, who had been the attorney before him and had died. He was still the society's attorney in June, 1872, when the petitioning creditor's petition in bankruptcy was filed. Owing to the presence of four members of the board being necessary to a quorum, and to the division of sentiment in the board in regard to the petition, no action could be taken, or was taken by the board as a body, on the subject of the petition. But the president, Ashton, Watts, and Cocke, united in giving directions to the society's general attorney, Mr. Murdaugh, vigorously to oppose the petition (see their affidavits filed September 3d, 1872, two papers), and "to take such steps as were necessary to defend the society from the charges preferred." From their affidavit, filed 24th November, 1874, it appears that they also joined James G. Holladay and John H. Gayle, attorneys, with Mr. Murdaugh in the conduct of this defence.

The prosecution of the proceedings in bankruptcy was vigorously conducted by the petitioning creditor and his attorney, and was vigorously resisted by these counsel for the defence during the whole period between the filing of the petition in June, 1872, and the final order of adjudication made on the 9th April, 1874. The order of adjudication made by the district court was on the 8th November, 1872. From this order there was an appeal to the supervisory power of the circuit court. That court made an order on the 11th October, 1873, affirming the order of adjudication. There was an application for a rehearing made to the circuit court, which was granted. The rehearing was at Richmond, on the 9th April; and then a final order was made confirming the original order of adjudication, and remanding the case here for regular proceedings in bankruptcy. The questions of law were difficult and important; the amount involved in the litigation was from seventy thousand to one hundred thousand dollars; most of the proceedings occurred in Baltimore (the residence of the circuit judge). Alexandria, or Richmond, requiring expensive trips by counsel, both in the matter of time and pecuniary outlay. The counsel for the defence called into requisition the eminent legal services of Taze-

well Taylor, Esq., in the arguments which were made at the distant places. Whether Messrs. Murdaugh, Holladay, and Gayle, and the majority of the board of directors were legally authorized to resist the proceedings in bankruptcy is a question which it is not for me now to consider. That question was raised in the beginning of this proceeding, and it was practically decided by both the district and circuit courts at that stage of it. They were heard at various times for two years; they were heard by the district court before the first adjudication; they were heard on appeal by the circuit court, and they were heard before the final order of the circuit court confirming both the preceding orders of adjudication. These services of counsel have been recognized by the district and circuit courts for two years, and have been performed. True, the services were unavailing to defeat the adjudication of bankruptcy; but they were none the less arduous, protracted, and expensive for that reason.

The only questions open for my decision are: Shall the services be paid for out of the assets in bankruptcy, and what shall be the compensation? The effect of an adjudication in voluntary bankruptcy is to take from the bankrupt the whole of his estate, into the control and disposal of the court. The control is retroactive, and reaches back from the day of adjudication to the day of the commencement of the proceedings; invalidating every intermediate transfer of property or payment of offset by the bankrupt. It strips the bankrupt of all his means, and all control over his means; entirely disabling him to compensate counsel for making defence against the proceeding of the petitioning creditor. Yet the law clearly contemplates a defence on the debtor's part and carefully provides for him the methods of making it. There is a special section (the 39th) of the bankrupt law [of 1867 (14 Stat. 536)], throwing safeguards around a debtor who is sought by creditors, against his will, to be put into bankruptcy, and deprived of the control of his property. In such a case the law requires the petition to be presented to the judge of the court (and not the register); it gives leave and opportunity to the debtor to answer the petition; it provides for trial, upon evidence and argument, of the allegations of the petition; and it allows this trial to be held, if the debtor so demand, before a jury of his countrymen. But all these provisions of the 39th section would be a mockery, if the court before which these important proceedings were had—the court which may already have taken control of the entire effects of the debtor —were disabled to pay out of these effects the costs of the defence. The right of the court to pay these costs is so clear as to need no argument. The reasons and decisions are given and cited by Bump, Bankr. (6th Ed.) pp. 221, 222. Are not the fees of

counsel a proper part of these costs? Equality of right between citizens is a constitutional guarantee. To secure it, equal laws are enacted, and, for the administration of these laws, independent courts are established, and trial by jury provided in all proper cases. But the difficulty of applying the law in each case is such that it would be a mockery to require each citizen to represent himself in a court of justice. In that case the learned and the ignorant suitor would be on an unequal footing. The man skilful in the law would have great advantage over him who had devoted his attention to other subjects. The rich and powerful would have greater ability to prosecute expensive litigation than the poor and humble. An independent bar, composed of learned and honorable lawyers, is as necessary to securing an equality of right among suitors, as even an independent judiciary or a jury of twelve impartial men.

The law and the courts equally recognize the value and necessity of legal services; and the latter are never slow to provide a proper compensation for them. The assistance of counsel is indispensable to the courts in ascertaining and defining the law on the subject litigated. I feel bound in this case to allow a proper fee to the counsel for the bankrupt, in whose defence they were engaged during the protracted litigation which I have described. My only embarrassment is as to the amount of the allowance. When the counsel for the petitioning creditor made a similar application, I referred his petition and bill to the creditors. A majority in number and in value of these recommended the payment of the amount of his bill. As these creditors knew far more of the history and the facts of the litigation which has been had than I could have known of a matter which transpired before I was commissioned, I was glad to defer to their recommendation; and I directed the bill of the petitioning creditor's counsel, thus approved by creditors, to be paid by the assignee. A like recommendation for the payment of a like fee comes from a large and respectable number (though a minority) of creditors in behalf of the counsel on the other side.[2] It seems to me that the action of the majority of creditors in fixing the compensation of counsel on one side virtually fixes it on the other. I assume from the tenor and character of the proceedings, that the resistance of the proceedings in bankruptcy was made in good faith. The hesitation of each of the two courts in deciding the points of law on which the adjudication depended shows that the legal questions involved were difficult

and doubtful. I do not feel it my duty, and I cannot consent, by my action on the present petition of the bankrupt's counsel, to pass censure by implication upon the course of the minority of the stockholders of the Portsmouth Savings Fund Society, or their counsel, in defending this bankruptcy. I shall therefore make an order directing the payment of the same fee to the counsel for the defence as was allowed to the counsel for the petitioning creditor by the majority in number and interest of the creditors.

On appeal from the decree of the district court rendered in accordance with this decision, the decree was reversed on the following grounds:

BOND, Circuit Judge. This is an application on the part of counsel of the bankrupt to be allowed compensation for services rendered his client in resisting the adjudication in bankruptcy. The Portsmouth Savings Society by a unanimous vote of its board finding itself insolvent, resolved to make an assignment. The deed of assignment was prepared by its counsel, but its execution was prevented by the refusal of the proper officers to sign it. There is no dispute that at the time of making this assignment the society was totally insolvent. Some twenty days afterward a petition was filed by a creditor in the district court alleging the bankruptcy of the society, and after a long litigation, lasting for about two years, upon appeal to the supervisory jurisdiction of the circuit court the bankruptcy was established. After this prolonged litigation, which arose from no dispute as to the necessity of making distribution of its assets among its creditors, but respected only the persons who should so distribute them, that is, whether or not an assignee appointed by the creditors under the bankrupt law or a trustee selected by the corporation, the creditors who have been kept out of their money merely because they asked distribution in the manner provided by statute are asked to pay the expenses of the parties who caused the delay. To state this proposition is to make it unnecessary to argue it. If it could be shown that any advantage had come to the creditors by reason of the services of the counsel, or that it was doubtful whether or not the society was bankrupt in fact, there might be some reason why the creditors should compensate those who served them, but there was no such condition of facts. It was a bold attempt on the part of the society to make distribution itself through its own appointees, and to defeat that provision of the bankrupt law which provides that the creditors may make selection of an assignee for that purpose.

To confirm the allowance of $5,000 out of the funds devoted to the payment of the claims of creditors for those purposes cannot be justified and is refused.

---

[2] The statement of counsel who argued the appeal in the circuit court was, that there was no objection to the principle of the decision below, but that the objection was that in this case, it resulted in paying too large a portion of the fund away as counsel's fees.